**Jay G. COLLINS, Appellant,**

v.

**WEIRTON STEEL COMPANY, Appellee.**

**No. 11908.**

United States Court of Appeals
Fourth Circuit.

Argued March 7, 1968.

Decided June 10, 1968.

Robert C. McDiarmid Atty., Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., and Alan S. Rosenthal, Atty., Dept. of Justice, and John H. Kamlowsky, U. S. Atty., on the brief), for appellant.

Joseph E. Madva, Pittsburgh, Pa. (Thorp, Reed & Armstrong, Pittsburgh, Pa., Martin F. Fahey, Weirton, W. Va., and Gilbert S. Bachmann, and Bachmann, Hess, Bachmann & Garden, Wheeling, W. Va., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, BUTZNER, Circuit Judge, and MER-HIGE, District Judge.

BUTZNER, Circuit Judge:

The issue on appeal is whether Jay G. Collins, a probationary employee of the Weirton Steel Company, occupied "other than a temporary position" within the meaning of Section 9(b) of the Uni-

versal Military Training and Service Act [50 U.S.C.App. § 459(b)] when he entered military service. We hold his position was not temporary and that he is entitled to the protection granted by the Act.

Employment at Weirton was subject to a collective bargaining agreement [1] that required a probationary period of 520 hours. During this time an employee could be discharged for any reason other than for filing a grievance. Probation had to be completed within six months. After completion, seniority was computed from the date the employee began probation. The company generally evaluated a probationer after 400 hours to determine if he should be retained.

Collins was hired as a laborer May 1, 1964. On July 3, 1964, after working 360 hours, he entered the armed forces. The company informed him his departure before completing probation terminated his employment status. After Collins was honorably discharged, the company hired him as a new employee on January 27, 1965. He completed probation on May 15, 1965 and was granted seniority as of January 27, 1965.

Collins claimed seniority from May 1, 1964. When the company refused to assign the earlier date, the United States Attorney brought this action.[2] The case was heard on cross-motions for summary judgment. The evidence disclosed that from May 1, 1964 through January 27, 1965 the company hired 804 full-time probationary employees. Of these, 218 were laid off as a result of force reductions, thirty-five quit, fifteen were discharged as unsatisfactory, three were physically disabled for work and four entered military service. The remaining 529 completed probation and were granted seniority retroactively. On this evidence the district judge found the company had discretion to discharge em-

1. The agreement provided in part:
"How the Company Seniority is Established
"(a). An employee shall establish Company Seniority upon completion of his probationary period.
"(b). New employees or a former employee rehired after a break in continuous service shall be considered probationary employees during their respective probationary periods:
"(1) A probationary employee's period of probation shall begin with the first day of actual work after hiring or rehiring as the case may be and shall consist of the first 520 hours of actual work thereafter. A probationary employee, for whom work is no longer available because of a reduction of force shall be terminated and if rehired shall begin a new probationary period. A probationary employee, who because of excused absences from work (normally due to disability), does not complete his 520 hours of actual work within six (6) consecutive calendar months beginning with the first day of his probationary period, shall, if subsequently rehired, be considered to be rehired after a break in continuous service;
"(2) The Company Seniority of a new or rehired employee upon completion of his probationary period shall be computed from the date of the beginning of his probationary period;

"(3) A probationary employee acquires no seniority applicable to any of the recognized seniority units during his probationary period. Probationary employees cannot file applications for entrance into a multiple or single job sequence but if assigned by Management to a job within a sequence, he shall be entitled to the same rights as if he had applied for entrance, subject to reassignment to another job or sequence as determined by Management. However, an arbitrary refusal by Management to reassign a probationary employee working on a job within a recognized sequence in order to make his job available to a non-probationary employee shall be a proper matter for disposition under the Grievance Procedure. A probationary employee may file and process grievances under the procedures provided in this Agreement but his services may be terminated by discharge or layoff as determined by the Company, except that the Company shall not discriminate against any probationary employee for filing or processing a grievance."

2. The government represents individual claimants to veterans' re-employment rights. 50 U.S.C.App. § 459(d).

ployees who had not worked at least the probationary 520 hours and that Collins did not have a reasonable expectation of continuing his employment beyond probation. Summary judgment was entered for the company.

▆▆▆▆ Section 9(b) of the Act[3] affords a statutory re-employment right to a veteran who "leaves a position (other than a temporary position)." His employer must restore him to his former job or to a position of like seniority, status and pay. The Act "clearly manifests a purpose and desire on the part of Congress to provide as nearly as possible that persons called to serve their country in the armed forces should, upon returning to work in civilian life, resume their old employment without any loss because of their service to their country." Accardi v. Pennsylvania R.R., 383 U.S. 225, 228, 86 S.Ct. 768, 771, 15 L.Ed.2d 717 (1966). To achieve this, the Act is liberally construed. Fishgold v. Sullivan Drydock & Repair

Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). The Act does not create a system of seniority for veterans. It operates within the framework of the seniority system established by collective bargaining. Aeronautical Industrial Dist. Lodge 727 v. Campbell, 337 U.S. 521, 526, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949). If the veteran is entitled to statutory re-employment, he must be accorded the seniority he would have acquired but for his military service. Tilton v. Missouri P. R.R., 376 U.S. 169, 175, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964).[4] For this reason, if Weirton is under a duty to re-employ Collins, it is also obliged to assign him the seniority he seeks.

▆▆▆ Collins' right to re-employment depends upon whether he occupied "other than a temporary position." Courts have disagreed about the position of a probationary employee. The principal cases[5] reflecting this division were de-

---

3. 50 U.S.C.App § 459(b):
    "In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—
    \*   \*   \*   \*   \*
    "(B) if such position was in the employ of a private employer, such person shall—
    "(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or
    "(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him

like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so."

4. The Court first made this interpretation of the Act in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). Congress approved by enacting § 9(c) (2) of the Act [50 U.S.C.App. § 459(c) (2)]:
    "It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

5. Probationers were considered temporary employees in Venzel v. United States Steel Co., 209 F.2d 185 (6th Cir. 1953), cert. denied, 348 U.S. 838, 75 S.Ct. 26, 99 L.Ed. 661 (1954); Lesher v. P. R. Mallory & Co., Inc., 166 F.2d 983 (7th Cir. 1948). Contra: Moe v. Eastern Air

cided before Tilton v. Missouri P. R.R., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964). In *Tilton* a collective bargaining agreement required employees to complete a 1040-day training period before assignment of seniority as journeymen mechanics. Military service interrupted the plaintiffs' training, but they completed it upon discharge and were assigned seniority as of the completion date. This left them junior to non-veterans who had embarked later upon the training program. Their claims for seniority were rejected. The Supreme Court reversed, holding that a veteran is entitled to the protection of the Act if "as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur." While *Tilton* is concerned primarily with seniority, its test of reasonable certainty is appropriate for determining re-employment rights.[6] In ascertaining whether advancement was reasonably certain, the Court held that the possibilities that work of the particular type might not have been available, that the veteran might not have worked satisfactorily or that sickness might have prevented his continued employment were not intended by Congress to defeat his seniority rights. If as a matter of course a company assigns seniority to an employee who satisfactorily completes his training, a veteran similarly situated, the Court concluded, is entitled to the seniority he would have attained had his training not been interrupted by military service.

The circuit court in *Tilton*,[7] and the district court here, relied on McKinney v. Missouri-Kan.-Tex. R.R., 357 U.S. 265, 272, 78 S.Ct. 1222, 1227, 2 L.Ed. 2d 1305 (1958), which held in part, "[O]n application for re-employment a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer." In *Tilton*, however, the Supreme Court clarified *McKinney*, emphasizing that for purposes of the Act an employer's discretion is exhausted by selection of an employee for training in those situations where promotion for a successful trainee is automatic.

■ Collins met the requirements of *Tilton*. As a matter of foresight it was reasonably certain he would have been retained after his probation.[8] It was undisputed that of the 804 employees hired during the time we are concerned with, all who satisfactorily completed probation were retained if jobs were available. The only possibilities militating against Collins were lack of work, ill health or failure to perform satisfactorily. In *Tilton*, the Court held these hazards did not destroy reasonable certainty of advancement. They are, as the Court pointed out, inherent in every veteran's employment case. We conclude

Lines, 246 F.2d 215 (5th Cir. 1957), cert. denied, 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958).

6. We find in Moe v. Eastern Air Lines, 246 F.2d 215, 219 (5th Cir. 1957), cert. denied, 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958), support for *Tilton's* reasonable certainty test in determining statutory re-employment rights. There, anticipating *Tilton* by seven years, the court held a probationer was not a temporary employee if "there was a reasonable expectation that employment would be continuous and for an indefinite time." That Moe was a skilled employee and

Collins a laborer presents no meaningful distinction calling for the application of the Act in one instance and its rejection in the other.

7. Tilton v. Missouri P. R. R., 306 F.2d 870 (8th Cir. 1962).

8. Collins also met the second part of the *Tilton* test. As a matter of hindsight, he successfully completed his probation. We recognize, however, that in some re-employment controversies, application of the hindsight principle is impossible. This would be the case, for example, if an employer refused to rehire a veteran whose probation was incomplete.

the same possibilities do not destroy reasonable certainty of continued employment or make a probationer a temporary employee.

Collins should be accorded statutory re-employment for another reason. If there had been no collective bargaining agreement at Weirton, and if Collins had been employed at will, or as long as the relation of employer-employee was mutually satisfactory, he would have been entitled to protection under the Act.[9] During his probation he was in effect an employee at will. It was the collective bargaining agreement that termed him a probationary employee and restricted his tenure. The agreement is not controlling. Employers and unions are not "empowered by the use of transparent labels and definitions to deprive a veteran of substantial rights guaranteed by the Act." Accardi v. Pennsylvania R.R., 383 U.S. 225, 229, 86 S.Ct. 768, 771, 15 L.Ed.2d 717 (1966). "And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946).

Finally, we reject Weirton's argument that the Act should not be applied because it will intrude upon management's discretionary right to select which employees will be released and which retained for regular employment. In this respect, a probationer's situation does not differ materially from that of any other veteran. He may not be discharged without cause within one year.[10] To the extent this limits management's prerogatives, it is a burden management must bear. The Act, however, does not require the advancement of a veteran

who is unable to complete successfully his probation. Cf. Tilton v. Missouri P. R.R., 376 U.S. 169, 181, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964).

The judgment of the district court is vacated and this case is remanded for entry of judgment for Collins.

---

9. See Bryan v. Griffin, 166 F.2d 748, 750 (6th Cir. 1948); Trusteed Funds, Inc. v. Dacey, 160 F.2d 413, 419 (1st Cir. 1947). In United States ex rel. and for Use and Benefit of Stanley v. Wimbish, 154 F.2d 773 (4th Cir. 1946), a seasonal employee was accorded statutory re-employment rights upon proof he was among those "customarily continued in their employment with recognition of their preferential claims to their jobs."

10. 50 U.S.C.App. § 459(c) (1).