**Samuel C. HANNA, Plaintiff-Appellant,**

v.

**AMERICAN MOTORS CORPORATION, Defendant-Appellee.**

**No. 76–1727.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1977.

Decided June 23, 1977.

Robert E. Kopp, Mark H. Gallant, Attys., Appellate Section, Civil Div., Dept. of Justice, Washington, D. C., William J. Kilberg, Sol. of Labor, William H. Berger, Atty., Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Herbert P. Wiedemann, Milwaukee, Wis., for defendant-appellee.

Before FAIRCHILD, Chief Judge, CASTLE, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

Plaintiff brought this suit to obtain job reinstatement with proper "seniority, status and pay," including lost wages, under the reemployment provisions of the Vietnam Veterans' Readjustment Act (38 U.S.C. § 2024(d) and (e)). Plaintiff is an honorably discharged veteran whose suit was instituted by the Department of Justice under 38 U.S.C. § 2022. He commenced work as an assemblyman at defendant American Motors Corporation's Kenosha, Wisconsin, plant on September 14, 1970. The applicable collective bargaining agreement required him, as a new employee, to serve a 60-day probationary period before obtaining seniority. Attainment of seniority after the 60-day period was automatic and related back to the employee's hiring date.

On September 17, 1970, defendant permitted plaintiff to absent himself from work in order to take a mandatory military service pre-induction physical examination. Work was available for the plaintiff that day if he had not been required to take the physical. On September 21, his hourly wage was increased from $3.25 per hour to $3.60 per hour at the request of his foreman.

On Wednesday, December 2, 1970, plaintiff was absent from work for reasons not

apparent from the record. However, on Thursday, December 3, Friday, December 4, and Monday, December 7, 1970, he was required to report to the Armed Forces Induction Center in Milwaukee, Wisconsin, for additional pre-induction physical examinations involving lengthy urinalyses. Plaintiff's presence at these examinations was mandatory under the Selective Service Act. Work would have been available for plaintiff at the Kenosha plant on all four of those days had he reported. He was put back to work on Tuesday, December 8, and worked until December 18, when he was laid off due to a reduction in force. This reduction included all assembly linemen who had not yet completed their 60-day probationary period. At that time, plaintiff had actually worked 56 days. Therefore, if the four military service physical examination days had been counted toward the completion of his probationary period, plaintiff would have attained a seniority status with a September 14, 1970, seniority date and would not have been laid off until February 28, 1971.

On March 10, 1971, plaintiff was inducted into the Armed Forces before being recalled to active employment by defendant. Six months later, on September 10, 1971, while he was still in military service, defendant wrote plaintiff that his employment was terminated because he had failed to complete the 60-day probationary period within one year of the date of his first employment, pursuant to the collective bargaining agreement.

Plaintiff was honorably discharged from military service on February 22, 1973, and was reemployed by defendant as a "new hire" on March 22, 1973, well within the statutory 90-day period for reemployment. 38 U.S.C. § 2021(a)(2). Defendant took the position that plaintiff had no veteran's reemployment rights under the Vietnam Veterans' Readjustment Act because he had been terminated before attaining seniority status and therefore was only a temporary employee and outside the scope of the Act. On April 2, his hourly wage as a new hire was increased from $4.14 to $4.52 per hour at the request of his foreman.

On April 23, plaintiff complained to defendant that it was violating his veteran's reemployment rights by refusing to accord him seniority based on the date of his original hire, September 14, 1970. Not receiving any satisfaction from defendant, plaintiff left work on April 24, 1973, with the intention of quitting. He was therefore terminated by defendant on that date although his ability, conduct and work performance were still considered as "average" by defendant.

Because defendant refused to reinstate plaintiff with the claimed seniority, the Government filed this suit on his behalf. Both parties filed motions for summary judgment on the question of liability. The district court granted defendant's summary judgment motion on the ground that plaintiff had only occupied a temporary position and therefore was not covered by the Vietnam Veterans' Readjustment Act. This appeal followed. We reverse.

The statute in question [1] provides that a job-qualified returning veteran is entitled to be restored to his former position or "to a position of like seniority, status and pay." 38 U.S.C. § 2021(a)(2)(B)(i). A workman "called to the colors was not to be penalized on his return by reason of his absence from his civilian job." The statute places the returning veteran on the seniority escalator "at the precise point he would have occu-

---

1. The original statute establishing veterans' reemployment rights was the Selective Training and Service Act of 1940, 54 Stat. 885. The name of the Act was changed in 1948 to the Selective Service Act of 1948, 62 Stat. 604, and again in 1951 to the Universal Military Training and Service Act, 65 Stat. 75. In 1967 the Act was renamed the Military Selective Service Act of 1967, 81 Stat. 100, and in 1971 the name was changed to the Military Selective Service Act, 85 Stat. 348, and found at 50 U.S.C. App. § 459. The reemployment provisions of the Military Selective Service Act were codified in 1974 with non-substantive wording changes in the Vietnam Veterans' Readjustment Act of 1974, 88 Stat. 1578, 38 U.S.C. § 2021 et seq. The reemployment provisions of the various Acts are substantially identical. Thus the judicial precedents developed under them are largely interchangeable.

pied had he kept his position continuously during the war." See *Fishgold v. Sullivan Corp.,* 328 U.S. 275, 284–285, 66 S.Ct. 1105, 90 L.Ed. 1230; 38 U.S.C. § 2021(b)(2). It accords an employee a leave of absence for purposes of pre-induction Armed Forces physical examinations, and therefore the employee must be permitted to return to his position "with such seniority, status, pay and vacation as such employee would have had if such employee had not been absent for such purposes." 38 U.S.C. § 2024(d) and (e). This protection is equal to that provided individuals embarking on active duty. *Fortenberry v. Owen Bros. Packing Co.,* 267 F.Supp. 605 (S.D.Miss.1966), affirmed, 378 F.2d 373 (5th Cir. 1967). However, this statutory protection extends only to an employee who absents himself from a position "other than a temporary position." 38 U.S.C. § 2021(a)(2)(A) and (B) and § 2024(e).

Under *Tilton v. Missouri Pacific R. Co.,* 376 U.S. 169, 181, 84 S.Ct. 595, 11 L.Ed.2d 590, a returning veteran is entitled to count his military service time toward a promotion if he demonstrates that as a matter of foresight it was reasonably certain that advancement would have occurred and that it did occur as a matter of hindsight. However, *Tilton* lays down the condition that a "returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period." *Id.* In *Brickner v. Johnson Motors,* 425 F.2d 75 (7th Cir. 1970), we applied *Tilton* and overruled our previous decision in *Lesher v. P. R. Mallory & Co., Inc.,* 166 F.2d 983 (7th Cir. 1947), in interpreting the phrase "other than a temporary position." In *Brickner* we established a two-part test for determining whether a position is "other than temporary." If the position itself is temporary, the employee is excluded from the protection of the Act. To satisfy the second criterion, we held "an employee who has a probationary status previous to leaving for military service must show that as a matter of foresight it was reasonably foreseeable that upon completion of the probationary period the employee would receive per-

manent status and as a matter of hindsight, it did in fact occur. *The inquiry is not whether the employee would complete the probationary period but upon completion whether the employee would receive permanent status."* (425 F.2d at 77) (Emphasis supplied).

The collective bargaining agreement in *Brickner* provided automatic permanent status at the completion of a 90-day probation period. Since Brickner completed a new probationary period after his return from service, this Court found that he held an "other than temporary position." Plaintiff was held entitled to seniority from his original date of employment.

Our mandate is "to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." *Fishgold v. Sullivan Corp.,* 328 U.S. 275, 285, 66 S.Ct. at 1111. Accord, *Alabama Power Co. v. Davis,* —— U.S. ——, ——, 97 S.Ct. 2002, 52 L.Ed.2d 595. The Act's purpose is " 'to assure that these changes and advancements in status that would necessarily have occurred simply by continued employment will not be denied the veteran because of his absence in the military service.' " *Id.* at ——, 97 S.Ct. at 2006, n. 8. In this task, the Supreme Court has rejected the idea that "the Act protects only rights which are a mere function of time in grade and does not entitle the veteran to be treated as if he had been actively employed or trained during the period of military service." *Tilton, supra,* 376 U.S. at 176, 84 S.Ct. at 600. It is in the light of these principles that we apply *Brickner* to this case.

Plaintiff's position with defendant was "other than temporary" under the first *Brickner* test because the defendant concedes here that the position of assemblyman is permanent (App. 80). The foresight aspect of the second inquiry of *Brickner* is satisfied because, except for the four days spent at the preinduction physical examinations, plaintiff would have acquired permanent status by December 18, 1970, when he

was laid off, for permanent status was automatic upon the completion of the probationary period. *Collins v. Weirton Steel Co.*, 398 F.2d 305, 309–310 (4th Cir. 1968). His advancement to permanent status was not "subject to a significant contingency." *Alabama Power, supra,* —— U.S. at ——, 97 S.Ct. 2002.

Under the hindsight test of *Brickner,* permanent status did occur in point of law (despite defendant's protestations) by December 18 because work was available for him on the four physical examination days and his work was routinely found satisfactory before layoff. Contrary to defendant's argument, *Brickner* did not hold that a veteran must have completed his probationary period before acquiring any rights under the Act. Such a holding would have in large measure rendered meaningless this Court's decision to overrule the rule of *Lesher v. P. R. Mallory & Co., Inc.,* 166 F.2d 983 (7th Cir. 1947), that a probationary employee *per se* occupies a "temporary position." Unlike the present case, Brickner had 57 days left to serve in his probationary period when he entered military service. Nothing in *Brickner* indicates that the plaintiff there had been granted any days of leave of absence status due to military reasons. Consequently, whether the four days plaintiff was required to attend pre-induction physicals may be counted towards the completion of the probationary period, thereby fulfilling the strict hindsight test, is an open question in this Court.

The strict hindsight prong of the *Brickner* test has subsequently been somewhat muted in *Pomrening v. United Air Lines, Inc.,* 448 F.2d 609, 613 (7th Cir. 1971):

"it must appear, as a matter of hindsight, that [plaintiff] would have probably completed his [probation] in the normal course had it not been interrupted by his military service."

In *Tilton* where job-qualifying training was involved, the Act cannot serve as a magic wand which gives a job to a returning veteran which requires training for its successful performance unless he first completed his training period. But when a proba-

tion rather than a training program is involved, *Brickner* itself directs that the "inquiry is not whether the employee would complete the probationary period but upon completion whether the employee would receive permanent status." 425 F.2d at 77; *United States ex rel. Adams v. General Motors Corp.,* 525 F.2d 161 (6th Cir. 1975). Since plaintiff's ability, conduct and work performance were concededly satisfactory, he actually would have received permanent status but for military service since the probationary period here was not intended to develop skills or increase proficiency. "As a probationary employee, [Hanna] had every reason to expect that his employment would be continuous and for the indefinite future"; in short, "other than temporary". *Moe v. Eastern Air Lines,* 246 F.2d 215, 219 (5th Cir. 1957); *Collins v. Weirton Steel Co.,* 398 F.2d 305, 309 n. 6 (4th Cir. 1968). Therefore, when laid off on December 18, 1970, plaintiff was in "other than a temporary" position.

In any event, application of a strict hindsight principle is unnecessary where the employer refuses to rehire a veteran whose probation is incomplete. *Collins, supra,* 398 F.2d at 309 n. 8. Here, as shown above, if the company had credited the four days of physicals, plaintiff would not have been laid off until over two months later than he actually was. By refusing to let plaintiff work through February 28, when the next most junior men were laid off, defendant made it impossible for plaintiff to complete his probation within a year of the date of his first employment despite his ability and willingness to do so. Completion of probation should be excused where it is the fault of the employer and not the veteran that the probation was not completed in accordance with the terms of the collective bargaining agreement.

As seen, plaintiff should be viewed as having held an "other than a temporary position" as early as the layoff date of December 18, 1970. Therefore, under 38 U.S.C. § 2024(d) and (e), plaintiff had to be credited with the four days he missed due to the pre-induction physicals. Were plain-

tiff credited with the four days, he would have been deemed non-probationary and would not have been laid off until February 28, 1971. It is irrelevant that the defendant may have laid him off in good faith. Cf. *O'Mara v. Petersen Sand & Gravel Co.*, 498 F.2d 896, 898 (7th Cir. 1974). But for the pre-induction physicals, plaintiff would have collected his salary until February 28, 1971, and would have been reinstated upon return from active duty with a September 14, 1970, date with all attendant rights under the collective bargaining agreement. Thus under the Act plaintiff is entitled to reinstatement with a September 14, 1970, seniority date and to collect lost wages from December 18, 1970, until at least February 28, 1971, his proper layoff date.[2] 38 U.S.C. § 2022; *United States ex rel. Adams v. General Motors Corp., supra.* Plaintiff did not waive his rights under the Act by his April 24, 1973, refusal to continue in the inferior status accorded him by the defendant. *O'Mara v. Petersen Sand & Gravel Co.*, 498 F.2d 896 (7th Cir. 1974).

Accordingly, the district court's judgment is reversed and remanded for further proceedings consistent herewith.

[2]  He will also be entitled to recover lost wages from April 24, 1973, when he left defendant's employ, to date unless on remand defendant can show that plaintiff abandoned his willingness to continue in its employ under the conditions mandated by the Act when he enrolled in the University of Wisconsin-Parkside in September 1973 as a student seeking a degree. See *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 267–268 (10th Cir. 1975).