James C. **VOLIVA**, Plaintiff,

v.

**SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA; Seafarers Pension Plan; Joe Digiorgio, Trustee; Frank Drozak; Roman Galewicz; Paul Dempster; Steve Edney,*** Defendants.

**Civ. A. No. 87–232–N.**

United States District Court, E.D. Virginia, Norfolk Division.

Feb. 19, 1988.

* All defendants except Seafarers Pension Plan were dismissed from case on November 25, 1987.

Paul M. Lipkin and Mary G. Commander, Goldblatt, Lipkin, Cohen, Anderson, Genkins & Legum, P.C., Norfolk, Va., for plaintiff.

Karen Lindemann Acors, Norfolk, Va., for defendants.

## AMENDED ORDER

CLARKE, District Judge.

This action is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*[1] and the Vietnam Era Veterans' Readjustment Assistance Act (the "Veterans Act"), 38 U.S.C. § 2021, *et seq.*[2] Plaintiff, Mr. James C. Voliva, is a former seaman and a member of Seafarers International Union of North America ("SIU"). By Order dated November 25, 1987, defendant SIU and the individual trustee defendants DiGiorgio, Drozak, Galewicz, Dempster and Edney were dismissed from this action. The remaining defendant is the Seafarers Pension Plan (the "Plan"), a duly constituted ERISA plan. Voliva alleges that the Plan has improperly denied his application for a disability pension by incorrectly calculating the number of days credit he accrued toward eligibility for a disability pension.

*Findings of Fact*

This action was tried before the Court. The Court makes the following findings of fact.

First, an explanation of SIU's membership structure is in order. Membership in SIU is broken down into three classes: "A", "B" and "C". A class members are the most senior and have first choice of jobs. B class members are the next in seniority and can choose jobs not taken by A class members. C class or "non-book" members are last in seniority. C class members can only obtain jobs not taken by A and B class members and only if the C class members are present at the union hall when the jobs are offered. In addition, C class members can only take jobs for 60 days or one round trip. Since C class members are not listed in the union membership book, anyone can be a C class member by simply appearing at the union hiring hall and offering to work. Movement to higher classes requires a member to work a specified large number of hours over a certain time period.

Voliva started his maritime employment in 1953 as a C class member. In that year, he worked for a short period as a seaman for Norfolk Dredging Company, earning $258.25. In early 1954, Voliva again worked for a short period for Norfolk Dredging, earning $299.00. From July 1955 through September 1956, he worked as a seaman for Curtis Bay Towing Company. With Curtis Bay, he worked shifts of 30 days on and 15 days off. In late 1956, Voliva worked 63 days on a deep-sea job aboard the MORNING LIGHT. This job ended on December 18, 1956. In addition to his maritime employment, plaintiff had numerous other short-term, land-based jobs from 1953 to mid–1957.

Voliva was unsuccessful in obtaining seaman's work after the deep-sea job, al-

---

**1.** Although the Complaint does not allege the specific ERISA provision under which plaintiff is suing, plaintiff clearly seeks relief under 29 U.S.C. § 1132(a)(1)(B) to recover benefits he alleges are due to him under the terms of an ERISA plan.

**2.** Plaintiff's allegation of violation of the Veterans Act is somewhat conclusory. See Complaint, ¶ 10. However, his allegation is specific enough *to put defendant on notice of his claim,* see *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), and, in fact, defendant makes no attack on the sufficiency of the allegation.

though he continued to look for maritime employment at the union hiring hall. In mid-1957, the United States Army drafted Voliva. Instead of serving in the Army, he opted to serve in the United States Coast Guard. Plaintiff served in the Coast Guard from July 18, 1957 to July 17, 1959. Within two weeks of his discharge, Voliva, still a C class member of SIU, began again to look for maritime employment at the union hiring hall. His efforts, which he continued for approximately six months, were unsuccessful. During this period, he obtained unemployment compensation from the state of North Carolina. He also worked odd jobs at this time. In early 1960, Voliva obtained steady employment in the insurance industry and continued in this line of work until mid-1965.

Plaintiff obtained his next maritime employment in 1966 as an able-bodied seaman with Curtis Bay. He was still a C class member of SIU. From that time, plaintiff obtained regular work in the maritime industry with one major exception. From 1969 to 1971, Voliva was on maintenance and cure for a work-related injury.

Plaintiff eventually became an A class member and a licensed first mate. However, in late 1979, he sustained another work-related injury and again went on maintenance and cure. He continued on maintenance and cure until 1981, when he was found permanently unfit for duty because of the injury. On July 24, 1981, Voliva submitted an application for a disability pension to the Plan.

### Legal Issues

This case revolves around a single provision of the Seafarers Pension Plan Regulations (the "Regulations"). Article 4, Section V.A provides in part:

An employee shall be eligible to retire on a Disability Pension if:

1. He has credit for at least 4,380 days of Service;

There is no contention that plaintiff fails to meet any other eligibility requirement for a disability pension.

By Voliva's calculation, he should be credited with approximately 4,642 days of Service and, therefore, is eligible for a disability pension. The Plan, however, contends that plaintiff only accumulated roughly 3,200 days of Service. The discrepancy between the two figures is mainly attributable to the parties differing interpretation of the phrase "days of Service". Voliva takes the position that days of Service include 637 days he was on maintenance and cure from 1969 through 1971. These days are over and above 273 days he was on maintenance and cure during this period for which he has received credit. Additionally, Voliva maintains that his 730 days of Coast Guard service should be credited toward his eligibility for a disability pension. The Plan does not include these two periods as days of Service.

Therefore, the Court must resolve whether the 637 days plaintiff was on maintenance and cure from 1969 through 1971 and the 730 days he served in the Coast Guard are days of Service that must be credited toward his eligibility for a disability pension. The Court agrees with Voliva as to the maintenance and cure days and with the Plan as to the Coast Guard days. Because of this conclusion, the Court need not resolve whether the small number of remaining days in dispute are days of Service.[3]

### Maintenance and Cure Days

The Plan excludes all of Voliva's days of maintenance and cure from 1969 to 1971 in excess of 273 from consideration for his disability pension eligibility. This exclusion results in plaintiff not being credited with the remaining 637 days he was on maintenance and cure during this period.

Courts traditionally defer to the interpretation of ERISA plan documents made by the plan's trustees, employing an "arbi-

---

**3.** The remaining days in dispute include 26 days Voliva claims to have worked in 1956 and 1957 for which the Plan has not given him credit, 6 days he spent at the Harry Lundberg School of Seamanship in August and September 1977, and 43 paid vacation days he took from 1978 to 1980.

trary and capricious" standard of review. Cf. *LeFebre v. Westinghouse Electric Corp.*, 747 F.2d 197, 204 (4th Cir.1984); *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1006 (4th Cir.1985). The Court therefore reviews the Plan's interpretation of the Regulations to exclude 637 days Voliva was on maintenance and cure under the arbitrary and capricious standard.

The Regulations, Article 2, Section A, provide in part:

Unless otherwise specified herein Service shall include:

\*　　\*　　\*　　\*　　\*　　\*

3. Periods during which an employee receives Significant Accident Benefits or Hospital Benefits from the Seafarers Welfare Plan, or Maintenance and Cure from an Employer.

However, the Regulations also impose a limit to the number of days under Article 2, Section A.3 that can be included as days of Service. Article 4, Section V.B, provides:

In satisfying the Service Requirement of Section A.1., above [i.e., the 4,380 days requirement] ... no more than ⅓ of the required Service may be service as defined in Article 2, Sections A.3 and A.4.

Therefore, the Regulations as written allow a maximum of 1,460 days of maintenance and cure to be counted toward the 4,380 day eligibility requirement.

The Plan maintains that it has never allowed more than 273 days of maintenance and cure to be applied toward disability pension eligibility, although there was no written regulation to that effect at the time Voliva applied for a disability pension. Mr. Michael DiPrisco, a trustee of the Plan, testified that this limit has been consistently applied and has never been waived.

■ Apparently, the Plan's trustees committed a drafting error in another provision of the Regulations. As originally enacted, Article 4, Section V.C limited maintenance and cure days to *273* for purposes of the Article 4, Section V.A.2 requirement that an employee work *125* days in the calendar year preceding his application for a disability pension. Article 4, Section V.C, then, was originally a meaningless provision. It was amended on June 1, 1985, approximately four years after Voliva's application, to refer to the 4,380 days of Service requirement of Article 4, Section V.A.1. Nonetheless, the Court must look to the Regulations in effect at the time Voliva applied for a disability pension. Furthermore, the Court cannot reform the Plan trustees' apparent negligent drafting mistake in what was essentially a contract of adhesion and thereby deny plaintiff credit for his 637 maintenance and cure days. Cf. *Hoffa v. Fitzsimmons*, 499 F.Supp. 357, 362 (D.D.C. 1980) *aff'd in part, vacated in part on other grounds*, 673 F.2d 1345 (D.C.Cir. 1982) (pension plan actuary's allegedly incorrect calculation of sum in lump sum payment contract not grounds for granting plan reformation or recision of contract); *Yablon v. Metropolitan Life Ins. Co.*, 200 Ga. 693, 38 S.E.2d 534 (1946) (negligence on part of insurance company's typist in attaching incorrect benefits rider to insurance policy not grounds for granting insurance company reformation of policy).

This Court may be the first to confront a situation in which ERISA plan trustees have failed to adhere to their plan's documents because of their apparent drafting mistake. Several courts, though, have held that the trustees' imposition of requirements not specified in plan documents amounts to arbitrary and capricious conduct. *See e.g., Blau v. Del Monte Corp.*, 748 F.2d 1348, 1354 (9th Cir.1984); *Morgan v. Mullins*, 643 F.2d 1320, 1321 (8th Cir. 1981).

In *Blau*, the corporate employer's ERISA plan provisions stated that severance pay would be given to an employee if his job was "eliminated" and "alternative employment opportunities [were] unavailable within the Corporation" However, the employer consistently imposed an additional, unwritten requirement: severance pay was only paid to an employee if he remained unemployed after his job was eliminated. The employer argued that, despite the language of the plan, the purpose behind the severance pay policy was to benefit only terminated employees who remained unemployed. 748 F.2d at 1354–

1356. The *Blau* court gave no weight to this argument or to the employer's consistent imposition of the requirement, reasoning:

> ERISA seeks to safeguard the well-being of working men and women and to apprise them of their rights and obligations under any employee benefit plan. Not coincidentally, the evils against which ERISA was enacted to guard—insecurity, lack of knowledge, and inability to police plan administration—are just the evils that appear in [the employer's] administration of its plan.

*Id.* at 1356 (quotations and citations omitted). Accordingly, the *Blau* court held that the employer acted arbitrarily and capriciously in imposing a requirement for severance pay not set forth in the plan provisions for severance pay. *Id.*

Although the employer in *Blau* was guilty of imprecision in drafting, while the Plan's trustees here were apparently guilty of a mistake in drafting, the effect was the same: in each instance, a requirement not set forth in plan documents for payment of benefits was imposed. The Plan's trustees may have intended that no more than 273 maintenance and cure days for any one injury be credited toward the 4,380 days of Service requirement; however, the Regulations do not effectuate this intent. Instead, as noted above, the Regulations already impose the substantial limitation that only one-third of the 4,380 days of Service can be maintenance and cure days. Voliva had a right to rely on the Regulations as written, and the Plan acted arbitrarily and capriciously in denying him credit for the 637 maintenance and cure days based on an unwritten policy.

### Coast Guard Service

■ As a preliminary matter, the Court notes its standard of review of the Plan's determination that plaintiff's 730 days of Coast Guard service are not days of Service under the Regulations. As stated above, an interpretation of ERISA plan documents by the plan's trustees will not be overturned unless the determination is arbitrary and capricious. *LeFebre,* 747

F.2d at 204; *Ciba–Geigy,* 761 F.2d at 1006. The rationale behind this standard of review, as stated by the *Ciba–Geigy* court, is

> ... to ensure that administrative responsibility rests with those whose experience is daily and continual, not with judges whose exposure is episodic and occasional.

761 F.2d at 1006.

However, the issue of whether Voliva's days of Coast Guard service should count towards his disability pension requires an interpretation of the Veterans Act rather than the Regulations. The parties agree that if Voliva is covered by the Veterans Act, the Act requires that his days of Coast Guard service be considered days of Service. The Plan, though, interprets the Veterans Act as inapplicable to Voliva. It argues that his maritime employment before Coast Guard service does not meet the Veterans Act requirement that a person be inducted into the armed forces from an "other than temporary position." *See* 38 U.S.C. § 2021(a) (1982).

The Court clearly is required to make its own findings of fact on this issue for two reasons. First, the rationale behind applying the arbitrary and capricious standard falls away when ERISA plan trustees interpret something other than their own plan documents. They have not acquired expertise from day-to-day dealings with the subject matter that would argue for application of a deferential standard. Certainly in this instance, the Plan's trustees have no greater expertise than a federal court in interpreting a federal statute. Second, Congress enacted the Veterans Act to provide special rights to protect those who have served in the nation's armed forces. *McKinney v. Missouri–Kansas–Texas Railroad Co.,* 357 U.S. 265, 269, 78 S.Ct. 1222, 1225, 2 L.Ed.2d 1305 (1958). Federal courts ought not leave the enforcement of these special rights to private decision-makers by means of a deferential standard of review when Congress provided no such standard in the Act itself. Therefore, the Court looks to its findings of fact to determine whether plaintiff is covered by the Veterans Act.

The Veterans Act protects certain employment benefits

> ... of any person who is inducted into the Armed Services under the Military Selective Service Act (or under any prior or subsequent corresponding law) for training and service and who leaves a position (other than a temporary position) in the employ of any employer in order to perform such training and service....

38 U.S.C. § 2021(a) (parentheses in original). As stated above, the parties do not dispute that the Veterans Act entitles plaintiff to disability pension credit for his days of Coast Guard service if he is protected by the Act. The Plan, though, argues that Voliva did not leave an other than temporary position when he entered the Coast Guard.

The test in this Circuit for determining a person's employment status under the Veterans Act and its predecessor statutes is whether "there is a reasonable expectation that employment would be continuous and for an indefinite time." *Collins v. Weirton Steel Co.*, 398 F.2d 305, 309 fn. 6 (4th Cir.1968) (quoting *Moe v. Eastern Air Lines*, 246 F.2d 215, 219 (5th Cir.1957), *cert. denied*, 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958)). *See also Tilton v. Missouri Pacific Railroad Co.*, 376 U.S. 169, 181, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964). The *Collins* plaintiff's employment status was explained as follows:

> Employment ... was subject to a collective bargaining agreement that required a probationary period of 520 hours. During this time an employee could be discharged for any reason other than for filing a grievance. Probation had to be completed within six months. After completion, seniority was computed from the date the employee began probation. The company generally evaluated a probationer after 400 hours to determine if he should be retained.
>
> Collins was hired as a laborer May 1, 1964. On July 3, 1964, after working 360 hours, he entered the armed forces. The company informed him his departure before completing probation terminated his employment status....

> [F]rom May 1, 1964 through January 27, 1965 the company hired 804 full-time probationary employees. Of these, 218 were laid off as a result of force reductions, thirty-five quit, fifteen were discharged as unsatisfactory, three were physically disabled for work and four entered military service. The remaining 529 completed probation and were granted seniority retroactively.

398 F.2d at 307 (footnote omitted). Upon this evidence, the *Collins* court held that there was a reasonable certainty the plaintiff would have been retained after the probationary period, and therefore that the plaintiff was other than a temporary employee. *Id.* at 309–310.

In the present action, no employment statistics of the sort in *Collins* were put into evidence. However, the evidence clearly shows that Voliva's employment status offered him far less certainty of permanent employment than the *Collins* plaintiff had. Voliva's status as a C class member of SIU was not the equivalent of probationary employment. In fact, his C class membership did not confer employment at all. Instead, it merely allowed him to be chosen from the "pool" of C class members for jobs not taken by A and B class members. As stated before, this pool consisted of anyone who went to the union hall and offered to work. Furthermore, his C class membership actually prevented him from remaining continuously employed: it limited him to working 60 days or one round trip on any single job.

■ Although Voliva did obtain sporadic employment as a seaman before entering the Coast Guard, he testified that he spent many hours during this period waiting at the union hall for maritime employment that he was unable to obtain. In particular, he was unable to find maritime employment from the end of his deep-sea job on December 18, 1956 until he enlisted in the Coast Guard on July 18, 1957. Additionally, the records show that he held numerous land-based jobs from 1953 to mid–1957. From these facts, the Court must conclude that plaintiff's status as a C class member of SIU did not give him a reasonable expec-

tation of continuous employment as a seaman.

The Court finds added support for its conclusion in *Cox v. International Longshoremen's Association*, 343 F.Supp. 1292 (S.D.Tex.1972), *aff'd*, 476 F.2d 1287 (5th Cir.1973). *Cox* is factually similar to the present action. In *Cox*, the plaintiffs were union longshoremen seeking seniority benefits for their time spent in the armed forces. All of the plaintiffs were "Class D" members of the longshoremen's union, or "casuals," before entering the armed forces. As Class D members, the plaintiffs stood in the same position Voliva stood in as a C class member of SIU. They had the least seniority and consequently were only eligible for jobs that more senior union members had not taken. They competed with all other Class D members for these jobs. Anyone could be a Class D member by going to the union hall and waiting for employment in the casuals' section. *Id.* at 1295. The *Cox* court held:

> As casual longshore laborers who worked only when the regular longshoremen could not fill all of the [work] gangs needed, they [the plaintiffs] could not reasonably expect that their employment would be continuous and for the indefinite future.

*Id.* at 1298. Accordingly, the court ruled that the plaintiffs were not entitled to the seniority benefits they sought. The holding in *Cox* bolsters the conclusion that Voliva had no reasonable expectation of continuous employment at the time he entered the Coast Guard. Because he had no such expectation, the Veterans Act does not require that his 730 days of Coast Guard service be credited towards his disability pension eligibility.

### Conclusion

Plaintiff has proved that the Plan's failure to credit all of the days he was on maintenance and cure from 1969 to 1971 was the result of the Plan's arbitrary and capricious interpretation of the Regulations. However, he has not shown that his status as a C class member of SIU before entering the Coast Guard entitled him to Veterans Act coverage so as to require

that his days of Coast Guard service be credited toward his disability pension eligibility. Therefore, plaintiff at most should be given credit for the approximately 3,200 days of Service to which the parties agree plus the 637 maintenance and cure days. The total, approximately 3,837 days of Service, falls short of the 4,380 days of Service required by the Regulations for eligibility for a disability pension.

For the foregoing reasons, the Court ORDERS that judgment in this action be entered for defendant.

The Clerk is DIRECTED to send a copy of this Order to counsel for the plaintiff and defendant.

IT IS SO ORDERED.