James P. COYNE, Plaintiff,

v.

WESTINGHOUSE ELECTRIC CORPO-RATION, Defendant.

No. 338-61.

United States District Court
S. D. California,
Central Division.

March 14, 1962.

As Amended April 3, 1962.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Gray, Binkley & Pfaelzer, Los Angeles, Cal., for defendant.

BYRNE, District Judge.

Plaintiff was employed by Westinghouse in the position of Stockman, Class 7 (Nights). On March 27, 1958, he was inducted into military service and served in the armed forces until March 26, 1960.

Upon plaintiff's departure, his duties as Stockman, Class 7 (Nights) were taken over by one David Clayton who, until his elevation to plaintiff's job, occupied a lower grade position.

The plaintiff returned from military service March 28, 1960, and made application to the defendant for restoration to his position of Stockman, Class 7 (Nights). The defendant refused to re-employ plaintiff as Stockman, Class 7, but offered to put him to work in the position of Prep. Painter, Class 6, which the plaintiff declined.

This action was filed to recover damages pursuant to the Military Training and Service Act (50 U.S.C.A.Appendix, § 459), which provides that a veteran shall, "if still qualified to perform the duties of such position, be restored by such employer * * * to such position or to a position of like seniority, status, and pay * * * unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so * * *." It is conceded that the plaintiff is still qualified to perform the duties of Stockman, Class 7 (Nights).

During the time plaintiff was serving in the armed forces, Clayton, who was filling plaintiff's position, was elected a steward by local 1502, International Union of Electrical Radio and Machine Workers. The collective bargaining agreement between Westinghouse and the Union included the following provisions:

"Section XII—

"J.   Seniority Preference

"1.   At the written request of the Local, an elected shop steward will be given seniority preference at the time when lay-offs take place within the section, department or division for which he is acting as steward.   Such seniority preference will enable him to retain his job within the section, department or division for which he is acting as steward so long as such job remains and when the job no longer exists the elected shop steward will be given seniority perference for another job in the same labor grade or successively lower grades if he can perform the duties of the job with only such training as an employe with previous experience on such job would require."

"XVII–Military Service

"A.   Employes drafted into military service will be granted military leave of absence.   The leave of absence will cover the period of such required military service and will be considered as continuous employment.

"B. The employe must apply for re-employment within ninety (90) days from the date of honorable discharge for the termination of the required period of military service. An employe so applying will be reinstated in his former position, or a position in the bargaining unit which he left on the basis of his seniority under the provisions of this Agreement * * *."

It is defendant's contention that when plaintiff applied for restoration, the work of his position was being performed by an employee who, under the Agreement, had greater seniority for that position than plaintiff by reason of his election as steward. Defendant submits that, in order to place plaintiff on his old job, Clayton would have been demoted, since there was only one stockman Class 7 (Nights) position. To do so, it is argued, would have constituted a violation of the seniority provisions of the Agreement and thereby resulted in violating the National Labor Relations Act.

In determining whether plaintiff or Clayton was entitled to the position of Stockman, Class 7 (Nights), the crucial question is: *Which one would have been entitled to the position if plaintiff had never entered the military service?*

There is no conflict between the Collective Bargaining Agreement and the Universal Military Training and Service Act. The Agreement provides: "The leave of absence will cover the period of such required military service and will be *considered as continuous employment.*" (Emphasis added.) The Act (50 U.S.C.A.Appendix, § 459) provides: "(2) It is declared to be the sense of the Congress that any person who is restored to a position (as required by the Act) should be so restored in such manner as to give him such status in his employment *as he would have enjoyed if he had continued in such employment continuously* from the time of his entering the armed forces until the time of his restoration to such employment." (Emphasis added)

It is clear that plaintiff is entitled to the status he would have enjoyed had he never entered the military service. This brings us to the point where the defendant falls into error. Had the plaintiff not entered the Service, Clayton would not have been entitled to displace him on March 28, 1958, nor could he have displaced the plaintiff when he (Clayton) was elected steward in 1959, nor at any other time. Clayton's election as steward did not entitle him to displace anybody. His preferential seniority became effective only in the event of "lay-offs". Section XII-J of the Agreement contemplates the protection of the steward's seniority in the event of "lay-offs", i. e. reduction of positions. There is no question of "lay-offs" involved in the instant case. There was but one position of Stockman, Class 7 (Nights) at all times between March 1958, and March 1960, and that was plaintiff's. Even if we assume there had been a "lay-off", Clayton would not have been entitled to displace the plaintiff as the Agreement limited his seniority preference in the event of a "lay-off" to "another job in the same labor grade or successively *lower* labor grades * * *." (Emphasis added).

The cases relied upon by defendant are distinguishable from the instant case. Aeronautical Industrial Lodge Dist. 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513; Fishgold v. Sullivan Drydock and Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; Ganweiler v. Elastic Stop Nut Corp., 3 Cir., 162 F. 2d 448; Koury v. Elastic Stop Nut Corp., 3 Cir., 162 F.2d 544; Di Maggio v. Elastic Stop Nut Corp., 3 Cir., 162 F.2d 546, 547. In all of these cases the veteran was restored to his position and subsequently laid off while men occupying like positions who had been granted seniority by virtue of the collective bargaining agreement were retained. The important distinction is that even had the veteran, in each of the cited cases, *not been in the service but had stayed on the job, his status would have been exactly the same* and he would have been laid off. What the courts decided was that the lay-offs were unrelated to the military

absence. In the instant case, if the plaintiff had not left for military service, his right to retain his position as Stockman, Class 7 (Nights) would have been unchallenged.

Defendant states that when Coyne made application for restoration to his position, it could have created a second Stockman, Class 7 (Nights) position and "thereby set the stage to create a 'layoff' situation". If the defendant means it might have created the second position, re-employed the defendant, then discontinued the position and laid off the defendant, thus circumventing the will of Congress, I am sure the courts would be qualified to deal with such a subterfuge. Of course had there been two positions created in good faith, one held by plaintiff Coyne and the other by Clayton, the subsequent legitimate abolition of one position would have resulted in the layoff of Coyne and the retention of Clayton by virtue of his position as steward. The short answer to this hypothetical situation is that these are not the facts in the instant case.

The purpose of an award under the Universal Military Training and Service Act is to compensate the veteran for the loss suffered by reason of the employer's wrongful action. The California State Unemployment Compensation is for loss of wages. Cf. California Compensation Ins. Co. v. Industrial Acc. Com'n, 128 Cal.App.2d 797, 276 P.2d 148, 277 P.2d 442. A reasonable construction of the Act requires a reduction of any award by any unemployment compensation received.

The plaintiff received unemployment compensation at the rate of $34.00 per week until July 20, 1960, when he was restored to the position of Stockman, Class 7 (Nights). During the period from March 28, 1960, to July 20, 1960, the rate of pay for the position of Stockman, Class 7 (Nights) was $2.635 per hour.

Counsel for plaintiff is directed to prepare, serve and lodge findings, conclusions and judgment pursuant to Local Rule 7, West's Ann.Code. If the parties can stipulate as to the correct computation, they may do so, otherwise both shall file computations as required by Rule 7(h).

## AMENDMENT TO MEMORANDUM OF DECISION

The court's Memorandum of Decision dated March 14, 1962, is amended as follows: In the third to last paragraph, the last sentence reading, "A reasonable construction of the Act requires a reduction of any award by any unemployment compensation received" is stricken from the Memorandum of Decision. The last two paragraphs are also stricken.

Since the filing of the Memorandum of Decision, it has come to the court's attention that the Department of Employment, State of California, requires the recipient of an award to pay back to the State, the amount of unemployment compensation benefits received, even though such benefits be deducted from plaintiff's award by the court or other agency.

By reason of defendant's refusing to restore plaintiff to his position of Stockman, Class 7 (Nights), plaintiff suffered a loss of wages between March 28, 1960 and July 20, 1960, inclusive, in the amount of $1749.64. He received unemployment compensation in the amount of $510.00. When he receives the award from this court, the State of California will require him to pay back the $510.00, and this is so even if this court deducts $510.00 from the award. Obviously the $510.00 should not be deducted from the award thus resulting in double payment.

See Decision of the Unemployment Insurance Appeals Board in the Matter of Josephine E. Sommers, Decision No. 5960, Case No. 20891, "Benefits Decisions", Vol. 6, No. 10.

This court will take judicial notice of the Unemployment Insurance Appeals Board decision. (See F.R.Civ.P. 43(a), 28 U.S.C.A., California Code of Civil Procedure § 1875). The court will prepare the findings and judgment.