Harold Steven CHERNOFF, Plaintiff,

v.

PANDICK PRESS, INC., Defendant.

No. 75 Civ. 846 (WCC).

United States District Court,
S. D. New York.

Oct. 20, 1977.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for plaintiff; Frederick P. Schaffer, Asst. U. S. Atty., New York City, of counsel.

Oscar A. Meyerson, New York City, for defendant.

## OPINION

CONNER, District Judge.

This action by plaintiff Harold Steven Chernoff (Chernoff) against his employer, Pandick Press, Inc. (Pandick), charging violation of 38 U.S.C. § 2021 by failure to accord him, on his return from military service, the seniority to which he was entitled, was bench tried in two parts. Following the first trial on the issue of liability, the Court rendered an Opinion, published at 419 F.Supp. 1192, ruling in favor of Chernoff. The present Opinion incorporates the Court's findings and conclusions, pursuant to Rule 52(a), F.R.Civ.P., following the second trial on the issue of damages.

The factual background of the case is set forth in detail in our earlier Opinion and need not be reiterated here.

The Court found that Chernoff was entitled to a position of seniority over his co-worker, Richard Santapola, so that, in lay-offs according to seniority, he should have been laid off for only such periods as Santapola was. Santapola was not laid off at all during the period from December 20, 1970 to the time of the second trial on February 3, 1977, whereas Chernoff was laid off during the periods set forth in the following table, in which periods Santapola's base pay and overtime earnings were as indicated:

| Chernoff's layoffs | Santapola's Base Pay | Santapola's Overtime Pay |
|---|---|---|
| 12/20/70–3/14/71 | $ 2,410.62 | $ 112.64 |
| 5/16/73–5/21/73 | 237.81 | 10.67 |
| 9/9/73–11/15/73 | 2,798.90 | 371.60 |
| 12/7/73–12/26/73 | 839.67 | 147.78 |
| 1974 (except first week) | 13,113.08 | 1,791.42 |
| 1975 (all) | 14,345.88 | 3,330.40 |
| 1/1/76–12/26/76 | 15,055.01 | 2,353.79 |
| 12/26/76–1/23/77 | 953.73 | 155.29 |
| Total thru 1/23/77 | $49,754.70 | $ 8,273.59 |

■ In cases similar to the present, the damages to be awarded a returning serviceman who has been denied proper seniority have been measured by the base pay and overtime pay received by another employee in the job classification in which the serviceman should have been employed. See, e. g., *Paredez v. Pillsbury Co.*, 259 F.Supp. 493 (C.D.Cal.1966).

■ Although overtime work at Pandick was normally on a volunteer basis, Chernoff testified that he sought and unfailingly accepted all opportunities for overtime work, and his employment records appear to support that claim. While he was employed, he regularly performed roughly twice as much overtime work as Santapola. However, the Court cannot accept his contention that, for this reason, he should recover, as lost overtime pay, double the amount of overtime pay Santapola received. There is no evidence that during the periods when Chernoff was laid off there was more overtime work available than Santapola accepted. The Court therefore can credit Chernoff with no more overtime pay than Santapola received. However, the Court finds that had Chernoff been employed during his layoff periods, he would have earned at least this much in overtime pay.

The Court concludes that, for lost base pay and overtime pay up to January 23, 1977, Chernoff is entitled to recover from Pandick the sum of $58,028.29.

After January 23, 1977, Chernoff lost base pay at a rate of $317.91 per week. On May 10, 1977, in order to cut off the further accumulation of damages, this Court ordered Pandick to reemploy Chernoff within 10 days with "all the benefits and privileges of a journeyman operator whose seniority in that job classification dates from March 15, 1969." Pandick has presumably complied with that order. However, assuming that employment was available for Santapola at Pandick between January 23, 1977 and the date of Chernoff's reemployment, Chernoff is entitled to recover additional lost base pay and overtime pay measured by the base pay and overtime pay Santapola received during that period.

Pandick strenuously urges that Chernoff's voluntary withdrawal from membership in the Printing Press Assistants' and Offset Workers Union (the Union) on October 22, 1974 made him ineligible for employment by Pandick, and that he therefore should recover nothing by way of lost earnings and benefits after that date. The Court finds that Chernoff withdrew from the Union only because he had long been unable to get work at Pandick and wished to be free of the burden of paying union dues. He continued thereafter to telephone the Union periodically to seek work at Pandick or at some other printer, on the reasonable assumption that if he obtained a job, his membership could be reinstated immediately. The Court concludes that under these circumstances, it would be unfair to cut off his right of recovery because of his resignation from the Union.

A similar conclusion was reached by the Court of Appeals in *Loeb v. Kivo*, 169 F.2d

346, 350 (2d Cir. 1948), an action under a predecessor statute, 50 U.S.C.A. Appendix § 308(e). There the Court ruled that the fact that the plaintiff, after being denied reemployment by defendant on his return from service, had become a member of a partnership which required him to devote his entire time to the business, thereby rendering him no longer available for the employment he had been denied, did not cut off his right to recover damages for such denial.

*Vacation Pay*

■ Under Paragraph 18 of the collective bargaining agreement between Pandick and the Union, each employee is entitled to "vacation credits" for each shift worked, in accordance with a schedule setting forth dollar amounts varying in accordance with the classification of the employee (apprentice, etc.), his length of time in the classification, the type of press worked and the shift, these amounts being roughly proportionate to his base pay. These vacation credits are paid by Pandick into a Vacation Depository Fund, and the amounts accumulated therein for each employee·are paid to him at the time of his vacation. The vacation credits are thus merely a form of deferred compensation for work performed.

The vacation pay should therefore be included in the amount of lost wages which Chernoff is entitled to recover. See *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 263 (5th Cir. 1974), an action under Title VII, which is comparable in purpose and plan; see *Acha v. Beame,* 531 F.2d 648, 655–56 (2d Cir. 1976).

In the case of Santapola, his vacation pay averaged approximately 9.1% of his base pay during the periods when Chernoff was laid off, and it appears reasonable to assume that if Chernoff had worked during those periods his vacation pay would have been the same.

Multiplying Chernoff's lost base pay of $49,754.70 by 9.1% yields a product of $4,527.68, which represents the amount of · vacation pay which Chernoff lost. Although vacation pay is not payable until vacation time, the great bulk of Chernoff's vacation pay accrued and was payable in past years, and the balance will probably be payable by the time the judgment is satisfied. Thus Chernoff is entitled to a judgment calling for its immediate payment, bringing his gross direct recovery up to $62,555.97.

*Foster v. Dravo Corp.,* 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975), and *LiPani v. Bohack Co.,* 546 F.2d 487 (2d Cir. 1976), are not to the contrary. In those actions under the immediate predecessor statute, 50 U.S.C.A. App. § 459, the courts ruled that a returning veteran is not entitled to receive the vacation benefits he would have earned if he had been employed during the period of his military service because these benefits were intended as deferred compensation for work actually performed, rather than accruing with the mere passage of time, as an incident of the undiminished job seniority which the statute guarantees.

By contrast, Chernoff is not claiming the vacation pay he would have received had he been working at Pandick during his absence in the military. Instead, he seeks only those benefits which would have accrued *after* his reemployment, had he been accorded the seniority to which he was entitled upon his return.

The lost vacation benefits are thus required to "make the veteran whole," as directed by *Loeb v. Kivo, supra,* 169 F.2d at 350.

*Sick Pay*

■ Chernoff also claims lost sick pay. Under Paragraph 41 of the collective bargaining agreement, each employee who works at least 110 days in a contract year is entitled to receive 5 days of paid sick leave, with unused sick leave being paid for in cash on each anniversary date of the contract. An employee is thus entitled to cash payments only if he has taken less than 5 days' sick leave in the contract year. There is no evidence from which the Court could conclude that Chernoff would not have used up his five days of sick leave and would

thus have been entitled to any such payments if he had been working during the layoff periods, and the Court therefore concludes that such payments should not be included in the computation of damages.

## Mitigation of Damages—other employment

The parties agree that Chernoff was required to mitigate damages by seeking other employment during his layoff periods. See *Loeb v. Kivo, supra,* 169 F.2d at 350. The Court finds that Chernoff made reasonable efforts to obtain and retain other employment during all such periods, and that he accordingly earned income as set forth in the following table:

| | | |
|---|---|---|
| Prior to 1974 | | None |
| 1974 | $ | 5,547.07 |
| 1975 | | 8,607.23 |
| 1/1/76–1/14/77 | | 7,014.07 |
| Total | $ | 21,168.37 |

The damages awarded to Chernoff should be reduced by this amount.

This reduces Chernoff's net recovery to $41,387.60.

## Unemployment Compensation

For the periods he was not employed, Chernoff received state unemployment compensation benefits totaling $3,810. In New York State, such payments are funded wholly or in major part by employer contributions.

Chernoff argues that these receipts came from a collateral source, like insurance proceeds, and are therefore not deductible from the recovery. This Court concludes otherwise.

As the Court stated in *Hood v. Lawrence,* 138 F.Supp. 120, 122 (D.N.H.1955):

"The purpose of an award of damages is to compensate the veteran rather than to penalize the employer, and the court is vested with discretionary power to fix the award so that it will not exceed the amount which the veteran has actually lost by reason of the employer's wrongful action. *Boston & Maine Railroad v. Bentubo,* 1 Cir., 160 F.2d 326; *John S. Doane Co. v. Martin,* 1 Cir., 164 F.2d 537.

" * * * [Petitioner] received state unemployment compensation in the amount of $120, and to this extent wage loss is reduced in computing an award of damages."

The unemployment compensation benefits were likewise deducted from the damages awarded to a returning veteran in *Fortenberry v. Owen Brothers Packing Co.,* 267 F.Supp. 605, 608 (S.D.Miss.1966), affirmed, 378 F.2d 373 (5th Cir. 1967), as were those awarded to a Title VII plaintiff in *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 721 (7th Cir. 1969).

Most of the decisions cited by Chernoff are readily distinguishable. In *Labor Board v. Gullet Gin Co.,* 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951), the Supreme Court expressly limited its ruling to a determination that the National Labor Relations Board had not exceeded its authority in refusing to deduct state unemployment benefits from a Title VII award:

"The question is here on this record, and we hold that the Board had the power to enter the order in this case refusing to deduct the unemployment compensation payments from back pay, and that in so doing the Board did not abuse its discretion."

The Court did not suggest that the Board would have abused its discretion in the matter of damages by deducting the compensation payments.

The ruling in *Local Lodge No. 790, I.A.M. A.W. v. Champion Carriers Inc.,* 470 F.2d 744, 745 (10th Cir. 1972) was similarly limited:

"The arbitrator's award authorized only amounts 'earned from other employment' to be deducted from the back pay award. Clearly the language of the award does not allow deduction of unemployment compensation benefits. * * *. The right of Champion to deduct the $520 [unemployment compensation] from the arbitrator's award is the only question before us."

In *Allyn v. Abad,* 81 F.Supp. 140, 141 (D.N.J.1948), the Court refused to deduct

benefits received by the veteran under the Federal Unemployment Readjustment Allowance Act, because the employer did not contribute to the fund from which the payments came, so that such payments were "in the nature of a gratuity" to the veteran which should not result in a windfall to the employer. The same reasoning was adopted by the Court in *N.L.R.B. v. Moss Planing Mill Co.,* 224 F.2d 702, 704 (4th Cir. 1955). Similarly, in *Florence Printing Co. v. N.L. R.B.,* 376 F.2d 216, 220 (4th Cir. 1967), the Court refused to deduct the strike benefits received by striking workers who had been ordered reinstated, because

"* * * indisputably, the strike benefits were financed solely by an assessment on the employees. Employees receiving strike benefits receive back only their own contributions and those of fellow-employees."

The only cited decision, in which the Court, on facts comparable to those here, declined to deduct unemployment compensation payments from the damages awarded a veteran is *Tidwell v. American Oil Co.,* 332 F.Supp. 424, 437–38 (D.Utah, 1971). But the decision of Judge Ritter in that case was based upon the Supreme Court's decision in *N.L.R.B. v. Gullet Gin Co., supra,* which this Court concludes is not controlling for the reasons discussed above.

In *Coyne v. Westinghouse Electric Corp.,* 204 F.Supp. 403, 406 (S.D.Cal.1962), the Court, after ruling that

"A reasonable construction of the Act requires a reduction of any award by any unemployment compensation received,"

filed an amendment stating that it had come to the attention of the Court that the veteran was required by California law to pay back to the state the amount of the unemployment benefits he received, whether or not that amount had been deducted from the damages awarded him. Therefore, to avoid double payment by the veteran, the Court reversed its ruling that these payments should be deducted from the award. See also *Coon v. Liebmann Breweries,* 86 F.Supp. 333, 336 (D.N.J.1949).

Chernoff suggests that the New York state law is the same. This Court will therefore deduct from the award to Chernoff the amount of $3,810 which he received as unemployment compensation, with the proviso that if Chernoff is required to reimburse the state for all or any part thereof, the damages awarded against Pandick will be increased by the amount of such reimbursement.

This further reduces the recoverable damages to $37,577.60.

*Interest*

Chernoff also seeks interest on the damages.

The allowance of pre-judgment interest in veteran's reemployment cases is discretionary. See *Accardi v. Pennsylvania R. Co.,* 369 F.2d 805 (2d Cir. 1966). This Court does not believe that, under the circumstances of this case, an award of interest is appropriate. Pandick did not flout the statute, but reemployed Chernoff at the seniority level to which it, in good faith, reckoned him to be entitled. It made an honest and understandable mistake, for which it is paying dearly.

By receiving his lost wages as a lump sum, Chernoff will find himself in a much better financial position than if he had been continuously employed by Pandick.

He will have been at least fully "made whole" even without an award of interest. That is all the statute requires, and all that this Court concludes he should receive.

*Pension Contribution*

Chernoff is entitled to an order that Pandick pay into the pension fund on his behalf the amounts which it would have contributed if he had been employed during the layoff periods. *Pettway v. American Cast Iron Pipe Co., supra,* at 263. For all of such periods except the year 1975, the rate of contributions as a percentage of earnings was fixed, and the contributions can be readily computed; during 1975, the contribution rates varied, but the weighted average was 4.86% of earnings. On this basis,

**828**

the contributions which should be made by Pandick to the pension fund on behalf of Chernoff amounts to $3,390.42.

### CONCLUSION

Chernoff shall have judgment against Pandick in the amount of $37,577.60, plus an amount equal to the base pay and overtime pay received by Santapola during the period from January 24, 1977 to the date of Chernoff's reemployment by Pandick.

Pandick should also pay into the Pension Fund Depository on Chernoff's behalf the amount of $3,390.42, plus the amount payable on account of Chernoff's lost earnings during the period from January 23, 1977 to the date of his reemployment by Pandick. Chernoff should submit a proposed judgment order on notice.