**Charles A. SAWYER, Plaintiff,**

v.

**SWIFT & COMPANY, Defendant.**

**Civ. A. No. 83–2403.**

United States District Court,
D. Kansas.

March 12, 1985.

---

Benjamin L. Burgess, U.S. Atty., Robert S. Streepy, Asst. U.S. Atty., Francis X. Lilly, Deputy Regional Solicitor, Tedrick A. Housh, Jr., Regional Solicitor, John B. Renick, Deputy Regional Solicitor, Keithley F.T. Lake, Atty., U.S. Dept. of Labor, Kansas City, Mo., and William Berger, U.S. Dept. of Labor, Office of Regional Solicitor, Atlanta, Ga., for plaintiff.

Daniel B. Denk of McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is presently before the court on the parties' joint motion for declaratory judgment. The parties have submitted stipulations of fact and deposition testimony, and presented the following three issues for determination by the court: (1) the responsibility of the defendant to allow the plaintiff a monthly absence from work in order to travel to Memphis, Tennessee, from Kansas City, to attend military reserve inactive training once a month; (2) whether the plaintiff gave defendant adequate notice that he would attend a reserve drill and not be present for overtime work assignments on the weekend of January 8 and 9, 1983; and (3) whether the plaintiff was terminated as a result of his attending military reserve inactive training on the weekend of January 8 and 9, 1983.

The parties submitted the following joint stipulations of fact:

1. Defendant is a corporation maintaining a place of business at 4612 Speaker Road, Kansas City, Kansas.

2. Plaintiff was employed by defendant on December 8, 1980, in an other than temporary position as a mechanic and was discharged on January 10, 1983.

3. Plaintiff joined the Navy Reserve in October, 1982, a component of the Armed Forces of the United States, and was assigned to a Naval Reserve Unit in Memphis, Tennessee. The plaintiff would meet a military transport plane at Richards-Gebaur Airport at 6:00 p.m. on the Fridays preceding his drills for transportation to Memphis.

4. Plaintiff was scheduled to perform inactive duty training with his Naval Reserve Unit in Memphis, Tennessee on December 11 and 12, 1982.

5. Plaintiff attended a second step grievance hearing at Swift & Company on December 9, 1982. Also present at the hearing were Stan Hall, Lucille White, Henry Duron, Ron Lupardus, Steve Dickey, and Pat Holland. Plaintiff contends that at this hearing he gave defendant verbal notice of his make-up drill the first nonholiday weekend in January, 1983. Defendant alleges there was no such notice given.

6. The plaintiff did not work at Swift & Company on Saturday, December 11, 1982.

7. The plaintiff's supervisor at Swift & Company was Jerry Kaprol. Steve Dickey was employed in December, 1982, as Chief Engineer.

8. Plaintiff was a union steward for Local 12, National Brotherhood of Meat Packers and Industrial Workers.

9. Plaintiff rescheduled his make-up inactive duty training originally scheduled at Memphis for December 11 and 12, 1982, with the Naval Reserve Unit at Olathe, Kansas, for January 8 and 9, 1983.

10. The plaintiff's shift at Swift & Company was from approximately 2:00 p.m. to approximately 10:30 p.m. weekdays.

11. Defendant's objection to plaintiff's attending inactive duty training in Memphis was based on the fact that the plaintiff had to leave work early on Fridays preceding reserve drills.

12. On January 6, 1983, defendant posted a list of employees scheduled to work on Saturday, January 8, 1983. Plaintiff's name appeared on this list.

13. Plaintiff attended his make-up inactive duty training at the Naval Reserve Unit, Olathe, Kansas, on January 8 and 9, 1983, and did not report to his scheduled overtime work at Swift & Company on January 8, 1983.

14. Plaintiff attended inactive duty training at the Naval Reserve Unit in Memphis, Tennessee, in October and November, 1982.

15. There were eight mechanics on plaintiff's shift.

16. Every employee assigned to work on January 8, 1983, was a mechanic.

17. The plaintiff had been disciplined on occasions prior to January 10, 1983, for his work attendance record at Swift & Company and was accordingly in the progressive disciplinary mode.

18. The plaintiff was scheduled to work on January 8, 1983, and he did not report for work on such date.

19. The plaintiff returned to work on January 10, 1983, and he was indefinitely suspended, and subsequently discharged by defendant.

■ The controlling law in this case is found in two sections of the Veterans Reemployment Rights Act, 38 U.S.C. Chapter 43. The first provision is 38 U.S.C. § 2021(b)(3), which states that any person covered by this provision of the Act "shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces." This statute, commonly known as the Vietnam Era Readjustment Assistance Act of 1974, was passed for the purpose of preventing reservists and National Guardsmen not on active duty, who must attend weekend drills or summer training, from being discriminated against in employment because of such membership. *Monroe v. Standard*

*Oil Co.*, 452 U.S. 549, 559–60, 101 S.Ct. 2510, 2516, 69 L.Ed.2d 226 (1981). 38 U.S.C. § 2024(d) states that a leave of absence from work "shall upon request be granted ... for the period required to perform ... inactive duty training." Furthermore, this statute states that an employee-reservist "shall report for work at the beginning of the next regularly scheduled working period after expiration of the last calendar day necessary to travel from the place of training to the place of employment following such employee's release."

Defendant's position is that although it was required to give plaintiff monthly release time for reserve duty, it was not required to grant plaintiff time off for travel to a remote training location. Defendant argues that although the statute specifically allows reservists time off from work to travel *from* the place of training to the place of employment, it does not cover travel *to* the place of training. This argument, although creative, is clearly without merit. This statute obviously contemplated that substantial time might be necessary to travel from one's place of employment to the location for reserve training. The language allowing an employee-reservist time to travel from reserve training to his employment would be meaningless if the employee-reservist did not also have sufficient time to travel from his employment to the reserve training. Defendant argues that this reading of the statute would encourage reservists to sign up in great numbers for reserve training at the most exotic locales available. It further contends that it had no duty to allow plaintiff additional time for travel to his reserve training in Memphis because there were closer locations, *e.g.*, Olathe, at which he could attend weekend reserve training. This argument ignores the fact that Memphis was the closest location at which plaintiff could perform the functions for which he was trained, namely those of an aircraft mechanic.

The case of *Mendaloff v. Weiner*, 92 Lab.Cas. (CCH) ¶ 12,924 (D.Md.1981), is instructive on this issue. In that case, Mendaloff was a member of the United States Army Reserves. He was required to report for weekend drills on Saturday at 8:00 a.m. This did not interfere with his job because he did not work on weekends. However, his unit was subsequently ordered to attend specialized training at a distant location that would have required Mendaloff to report at 7:45 p.m. on Friday night in order to travel to that location. The training schedule was changed before it went into effect and Mendaloff did not in fact have to report on Friday evenings. His employer nonetheless terminated Mendaloff because the "Army Reserve [was] too much of a problem." The court found that Mendaloff was terminated because of his obligation to report on Friday evenings, even though he was never in fact required to meet that obligation. The *Mendaloff* case involved travel time *to* weekend training, as does the instant case. The *Mendaloff* court made no distinction between travel time *to*, as opposed to travel time *from*, weekend training.

Defendant further argues that *Monroe v. Standard Oil Co.*, *supra*, stands for the proposition that an employer is only required to make "reasonable accommodation" under the Act, and that "reasonable accommodation" does not include granting plaintiff time off from work to travel to Memphis, Tennessee. Defendant's reliance on *Monroe* is misplaced. The Court held in *Monroe* that an employer is not required to make work-scheduling accommodations for employee-reservists not made for other employees. The Court held that "reasonable accommodation" had been made in § 2024(d) by requiring employers to grant a leave of absence to reservists whose duties force them to miss time at work. The *Monroe* decision is inapposite here. Plaintiff has not made any claims that defendant should be required to reschedule work hours so that he would avoid missing work. He only claims that his employer must give him unpaid leaves of absence from work in order to travel to his reserve training duties in Memphis, Tennessee.

We conclude that defendant has an obligation to allow plaintiff time off from work

in order to travel to Memphis, Tennessee, to attend military reserve inactive training.

We now turn to the second issue of whether plaintiff gave the defendant adequate notice that he would attend the reserve drill the weekend of January 8 and 9, 1983, and not be available for assigned overtime duties on January 8. The plaintiff is required to give notice to his employer under 38 U.S.C. § 2024(d). Plaintiff alleges that he gave the defendant notice during a grievance hearing on December 9, 1982, that he would need the first nonholiday weekend in January 1983 off to attend a makeup drill. Defendant alleges that no such notice was given. Upon reviewing the deposition testimony, the court is of the opinion that the plaintiff did indeed notify defendant during the grievance hearing that he would need this weekend off in January 1983. Not only did plaintiff testify to this fact, but Lucille White and Stan Hall, who were present at the second-step grievance hearing, testified that the plaintiff told both Mr. Dickey and Mr. Holland that he would have to attend the makeup drill and asked them if thirty days notice would be adequate. They further testified that he was told thirty days notice was sufficient. Henry Duron, who was also present, testified that he recalls plaintiff telling Dickey and Holland that he would have to make up the missed training, but he does not recall if plaintiff mentioned a specific date. Dickey and Holland both testified that they did not recall plaintiff ever giving them such notice. Further, the minutes of the grievance hearing reflect that plaintiff notified defendant that he would need the first nonholiday weekend in January 1983 off to attend a make-up drill. The court believes that plaintiff did tell Steve Dickey and Pat Holland at the grievance hearing that he would require the first nonholiday weekend in January 1983 off to attend a makeup drill. Defendant argues that when a list of employees scheduled to work on Saturday, January 8, was posted on January 6, the plaintiff should have again notified them that he was scheduled for this makeup drill. However, in light of the fact that defendant had

previously denied plaintiff time off to travel to Memphis to attend reserve training, we cannot say that it was unreasonable for plaintiff not to remind defendant that he needed the weekend off. Actually, the earlier denial is what precipitated plaintiff's need to attend a makeup drill in January.

As to the third issue of whether plaintiff was terminated as a result of attending inactive duty training, or whether he was terminated upon other grounds, the court is convinced that the plaintiff was terminated because he did not show up for work on January 8, 1983. Because defendant was under an obligation to permit plaintiff to attend reserve training on January 8, 1983, the conclusion is inescapable that plaintiff was terminated as a result of attending that training. Defendant argues that plaintiff had had numerous absences and tardies and was on disciplinary steps, and that it "had abundant grounds to terminate plaintiff irrespective of his reservist duties." Defendant states that "plaintiff's dismissal on January 10 relates to adequate notice in the context of his overall work record—not from mere attendance at the January makeup reserve duty as plaintiff charges." Regardless of plaintiff's overall work record, he was terminated as a result of not working January 8, 1983. Plaintiff did not work January 8, 1983, because he was attending inactive duty training in Olathe, Kansas, of which he had notified his employer a month previous.

In summary, the court reaches the following conclusions with regard to the three issues submitted.

(1) Defendant has a duty to allow plaintiff a monthly leave of absence from work on a regularly assigned work day in order to travel to Memphis from Kansas City to attend military reserve inactive training.

(2) Plaintiff gave defendant adequate notice that he would attend a reserve drill the weekend of January 8 and 9, 1983, and would not be available for assigned overtime duties on January 8, 1983.

(3) Plaintiff was terminated as a result of attending inactive duty training on January 8, 1983.

■ Plaintiff is entitled to reinstatement and back pay. Defendant contends that the back pay award should be reduced by the unemployment compensation plaintiff received. The court in *Mendaloff, supra,* held that an action under the Vietnam Era Veterans' Readjustment Assistance Act is analogous to a Title VII employment discrimination case. The *Mendaloff* court followed the Title VII decisions that refuse to offset unemployment compensation against back pay awards, because to do so would undercut the corrective force of a Title VII back pay award. The Tenth Circuit Court of Appeals has held that in Title VII actions the decision whether to reduce the back pay award by the amount of unemployment compensation is within the discretion of the trial court. *E.E.O.C. v. Sandia Corp.,* 639 F.2d 600 (10th Cir.1980).

We have held that unemployment compensation should not be used to reduce back pay. "Unemployment compensation is a collateral source awarded by the state in furtherance of a separate social policy. It would not be fair to allow the defendant ... to reap benefits from its own discriminatory action." *Davis v. Midland Broadcasters, Inc.,* No. 82–4061 (D.Kan., *unpublished,* 2/29/84) (citing *Craig v. Y & Y Snacks, Inc.,* 721 F.2d 77 (3d Cir.1983); *Brown v. A.J. Gerrard Manufacturing Co.,* 715 F.2d 1549 (11th Cir.1983) (*en banc* ) (*per curiam* ); *Kauffman v. Sidereal Corp.,* 695 F.2d 343 (9th Cir.1983) (*per curiam* ); *E.E.O.C. v. Ford Motor Co.,* 645 F.2d 183 (4th Cir.1981), rev'd on other grounds, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721, adhered to original position on remand, 688 F.2d 951 (1982) (*per curiam* )). We recognize authority that unemployment compensation should offset back pay in Vietnam Era Veterans' Readjustment Assistance Act cases. *Chernoff v. Pandick Press, Inc.,* 440 F.Supp. 822, 826–27 (S.D.N.Y.1977); *Chaltry v. Ollie's Idea, Inc.,* 546 F.Supp. 44, 51 (W.D.Mich.1982); *Green v. Oktibbeha County Hospital,* 526 F.Supp. 49 (N.D.Miss.1981). We find the cases that prohibit the offset of unemployment compensation to be more persuasive. Therefore, plaintiff's back pay award shall not be reduced by the amount of unemployment compensation he received. However, any income plaintiff received from other employment, such as his income from painting and installing cable television, must be subtracted from the back pay award.

■ The award of prejudgment interest is in the discretion of the trial court. *Hanna v. American Motors Corp.,* 724 F.2d 1300, 1311 (7th Cir.1984). The trial judge's discretion must be guided by the principle of making whole the plaintiff. *Id.* The defendant's "good faith" is of no consequence in a case arising under the Vietnam Veterans' Readjustment Act. *Id.* We conclude that plaintiff is entitled to an award of prejudgment interest and that an appropriate rate of interest is the statutory rate in Kansas of 10 percent. K.S.A. 16–201.

Plaintiff's counsel is directed to prepare, circulate and submit for the court's approval an appropriate Journal Entry of Judgment in accordance with the foregoing Memorandum and Order.

IT IS SO ORDERED.