Ms. Jo Ann Soker Executive Director Department of Personnel 1313 Sherman Street, First Floor Denver, CO 80203
Dear Ms. Soker:
I am writing in response to your request dated October 3, 1988 for a formal Attorney General's opinion upon the issue of whether the provisions of § 28-3-601, C.R.S. (1982), may be modified to reduce wages payable to public employees upon military leave of absence.
QUESTIONS PRESENTED AND CONCLUSIONS
1. What external constraints (such as federal law, case law, etc.) limit the state's ability to reduce or eliminate wages payable to public employees on military leave?
None.
2. Would a statutory change be required to modify the state's military leave policy to reduce wages for employees on military leave of absence?
Yes.
3. Can the State Personnel Board amend its rules to change compensation practices in order to conform to prevailing practices?
Yes, but only for fringe benefits which are not provided by statute.
ANALYSIS
1. The matter of wages payable during military leave of absence is not addressed by federal statute or regulation.
Compensation is authorized for each regular period of instruction or duty, 37 U.S.C. § 206 (1986). No limitation upon payment is expressed there. Although active duty reserves are permitted to continue to receive compensation from their employers,10 U.S.C. § 1033 (1956), reserves on inactive duty are afforded no similar protection.
Reservists "shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation" arising from their membership in the reserves,38 U.S.C. § 2021(b)(3) (1986). Congress has twice requested employers to "abide" by the provisions of § 2021 by granting reserve members leave of absence exclusive of earned vacation time. Pub.L. No. 92-252, Title XI § 1130, 96 Stat. 759
(1982), and Pub.L. No. 99-290, § 1, 100 Stat. 413 (1986).
The provisions of 28 U.S.C. § 2021 have been applied to protect a reservist's right to time off from work to travel to and attend inactive duty training, Sawyer v. Swift Co., 610 F. Supp. 38 (D. Kan. 1985) and to protect the reservist from discharge for that attendance, Bankston v.Stratton-Baldwin Co., 441 F. Supp. 247 (S.D. Ala. 1977). The "incidents or advantages of employment" to be protected are purely derivative of those which "exist at his place of employment" and are ascertainable "by reference to employment rules or employer practices," Monroe v. Standard OilCo., 613 F.2d 641, 645 (6th Cir. 1980).
These protections entitle reservists to leaves of absence in addition to earned vacation time. They do not, however, mandate that such leave be with pay or with "extra compensation."
2. It is, then, for the state to determine the matter of wages payable to employees upon the exercise of military leave. Since 1955, state officers and employees, and state public agency employees, have been entitled to leave of absence without loss of pay for up to 15 days, § 28-3-601(1), C.R.S. (1982).[1]
In 1982, the Colorado Court of Appeals had occasion to consider § 28-3-601, C.R.S. (1982), in a case where a teacher's association and a school district had negotiated a collective bargaining agreement which required teachers to turn over to the school district payments received from the military for reserve service. In holding that this agreement did not "on its face, conflict with any statutory prohibition," the court stated:
 [w]e find no legislative policy, express or implied, in § 28-3-601 to require extra compensation
for teachers who are reservists. Hence, we conclude that these parties were free to enter into a contract limiting the compensation salary received by teachers in the district while on military leave.
Colorado Springs Teachers Ass'n. v. School District 11,622 P.2d 602, 603 (Colo.App. 1982) (emphasis added).
Significantly, the court did not, and could not, authorize public entities to pay less than full wages to public employees; that is a matter of statutory right which only the legislature could modify. Rather, the court simply allowed the turnover of additional reserve training pay to the respective public entities.
3. The General Assembly directed the State Personnel Board to prescribe non-statutory fringe benefits by rule in accordance with prevailing practices and to recommend to the general assembly changes in "amounts or conditions" of statutory fringe benefits, § 24-50-104(9)(a), C.R.S. (1988).
Military leave, and pay while on such leave, are statutory fringe benefits, § 28-3-601, C.R.S. (1982), which may not be modified solely by rule.
However, the board may, in my opinion, promulgate a rule to require public employees to turn over pay received from the military: such extra compensation is not a right protected by statute. Colorado Springs Teachers Ass'n.,supra. The board has in the past required "turnover" of compensation received by employees while on leave under other circumstances, see e.g., R7-4-1 (turnover of workers' temporary total disability compensation payments received on injury leave); R7-4-6(A) (turnover of compensation received on jury leave); R7-4-6(B) (turnover of compensation received for appearance pursuant to subpoena).
SUMMARY
Neither federal statute nor regulation constrains or limits a modification resulting in reduction of payment of wages while on military leave. Reduction of wages payable during the exercise of military leave of absence can be effected only by statutory change to the provisions of § 28-3-601, C.R.S. (1982). The State Personnel Board may recommend statutory changes to the legislature, and may itself require employees to turn over reserve pay received while on military leave of absence.
Sincerely,
 DUANE WOODARD Attorney General
LEAVES OF ABSENCE EMPLOYEES, PUBLIC ARMED FORCES
§ 28-3-601, C.R.S. (1982)
PERSONNEL, DEPT. OF
Wages payable on military leave may be modified only by amendment to § 28-3-601 and such change is not precluded by federal statute or regulation.
[1] Private employees are entitled to up to 15 days leave of absence without pay, § 28-3-609, C.R.S. (1982).